Good morning or good afternoon, Your Honor. My name is Arthur Weed, and I'm the attorney for Jordan Huff, who is one of the two co-defendants in this case who appealed. And as the court knows from the file, what this is is a criminal case that began in, well, by a state investigation into a series of convenience store robberies in the Fresno area that went on and on for a period of six months. And there were some 30 robberies, and the police had a good idea who was doing it. But I don't believe in putting together what I can put together from reading the record that they had a very easy time accumulating evidence as to who was doing it, even though they were certain in their own minds that it was several individuals who were members of a criminal street gang in Fresno. And one of the things that I noticed when I was reading the record on appeal is that they actually arrested my client, Jordan Huff, probably about halfway through the six-month spree here, and then they released him. And I thought, well, you know, what is this, the Keystone Cops or something? Why would they do that? And then it dawned on me, well, I've seen that before many times. They present their case to the district attorney, and I'm guessing that this is what happened. And the district attorney said, sorry, we don't have enough evidence to prove who it was that did it. Now, the reason for that is because they used sophisticated masks during the robbery, and they wore gloves. In other words, they took great precautions to avoid being identified. And I think that's probably why my client was arrested and then released, because they weren't able to show that it was him that was doing it. Now, again, putting together what I think happened here, because I wasn't privy to this, and this is not part of the record, but it makes sense in terms of what it is that happens during these criminal investigations, that the state people, that is, the Fresno Police Department or possibly the state district attorney, would have gone to the federal people and said, we would like your help with this case. You know, this is a fairly serious matter, you know, a crime spree that is continuing unabated in our city. We think we know who did it. I appreciate your argument, counsel, but so far you've given us some speculation. Do you want to focus on cases or things that we really do know in the record? Okay, I'm sorry. No, you can do whatever you want, but I'm just saying so far we're just talking about what you think happened and not what the record shows. Well, I think it is important to what my argument is, and with the Court's indulgence, I would like to limit my oral argument here to the separation of powers argument that I made last in my opening brief. You're serious? Well, maybe I shouldn't be serious about that. I mean, unless there's something else. I mean, you want to talk about separation of powers, by all means do so, but I think you've got some real problems with that one. If you've got a better argument, I may suggest you go with that one. Unfortunately, I don't have a better argument. Okay, let's go with that then. In my own estimation, at least nothing I would say that I hadn't already said in the brief. Okay, go for it. Now, the reason I wanted to talk about separation of powers is because it is a difficult argument. For one thing, both the Supreme Court and this Court have said that separation of powers as an argument for unconstitutionality does not apply to 924C. But then what do you deal with, I guess it's Chavez, which is our case, and Borgenkircher, which is a Supreme Court case. Doesn't that dispose of that argument? My argument is that it does not dispose of it. Now, the reason is that those cases claimed that the encroaching agency was Congress. In other words, Congress, by enacting these mandatory minutes, which is what 924C is, Congress usurped the authority of the judiciary. Now, what my argument that I make in my brief is that it isn't Congress that's the encroaching party, it's the executive. And by the executive, I don't mean President Obama. I mean, that's what comes to mind when we talk about the executive. What I mean is the U.S. Attorney's Office. And that's what I wanted to say in my somewhat rambling discourse at the start of my argument. I apologize for that. I'll cut to the chase. I think what happened here is that the Federal Government said, oh, you need some direct evidence, we'll get it for you. Simply arrest all of these people that you think have been doing the robbery and turn them over to us, and we will indict them, and it will be explained to them either at the preliminary hearing or by their lawyer during an early phase in the proceedings that they're looking at seven and a half lifetimes in prison if they're convicted and the judge has no authority to do otherwise. In other words, the mandatory minimum scheme is a rubber hose, if you will, to get someone to cooperate. And that's what happened here. They didn't have direct evidence until one of the initial code offenders. So you're basically saying we should not permit plea bargaining at all. I'm sorry? You're saying we shouldn't permit plea bargaining at all. Oh, no. It has nothing to do with it. Because, in effect, that's what happens with plea bargaining. If you don't do this, we're going to indict you or you're looking at so and so to so and so, let's plead something else. Right. That's the normal situation. You know, how good is our case, how good is their case, and so on. That is not what happened here. What I'm suggesting is that the mandatory minimum scheme of 924C was used as a rubber hose, if you will. Is there anything in the record to substantiate that? No. I'm sorry, but there isn't, because how could there be? I understand. But what I'm saying is how can we as a court of appeal make any kind of a ruling based upon your, while very interesting and articulate, supposition as to what happened? We can't rely on that, can we? I suggest that you can rely on it. In fact, that's what you have to do in a good many of these cases. You have to decide what the real problem is. And, see, the real problem here is that there hasn't been deference given to the concept of rule of law, which means that whatever happens when there's a dispute between two people involving legal issues will be decided in court and not out of court. You can very easily put together what happened here in the sense of my client being indicted and six other people being indicted, and then one of them saying, okay, I'll turn state's evidence. Look at the sentences. My client got a sentence of 8,941 months. Victor Murray, who was the cooperating witness who provided the direct evidence that was needed, got a sentence of 12 years. What I'm suggesting is that that wouldn't have happened if the federal case had not been filed. Normally, these robbery cases are filed in the state court. Now, everyone knows that. We all know what happens, and we can easily presume that the federal filing in this case was used as a tool to get Victor Murray to testify. If we wrote something going along with your argument, we would have to say what you said and then cite a case. We just can't go off on our own. What's your strongest case for your argument? Either a Ninth Circuit case or a Supreme Court case. Well, there aren't any cases. That's my problem. All of the cases, and I admit this, hold that, well, if Congress wants to enact a mandatory minimum scheme, they can do so, but it is Congress's prerogative to prescribe a punishment. That's what the cases say. Now, what I'm saying is, okay, that's right, but what we have in this particular case, which makes it different than the other ones, is that we have what I would urge is an abuse of the prosecutorial discretion to file whatever charges are appropriate, because in this case I think it was used to obtain the cooperation of one of the witnesses, and I'm suggesting that's a violation of separation of powers. Do you have any cases in Ninth Circuit that say otherwise? Well, there are Ninth Circuit cases that say that 924C does not violate not separation of powers, but the Eighth Amendment in the sense of being a cruel and unusual punishment. Wouldn't we have to go in bank to overrule Kenney to accept your approach? I'm sorry, Your Honor? Wouldn't we have to go in bank and overrule Kinsey in order to accept your argument? No, Your Honor. I think you could distinguish it. Distinguish Kinsey. You would say, okay, we're distinguishing it because the other cases, the ones that have held that there's no constitutional violation, have simply said Congress has this authority. Now, in my opening brief, I admitted that they do have that authority. Well, help me write the opinion. Kinsey says what Kinsey says, and I would have to write an opinion saying Kinsey is distinguishable because. And what would the because be? Okay. Because this is a situation where the admitted valid authority of the U.S. Attorney was abused in some way that we can't exactly tell, but we know the appearance of evil when we see it, and there is an appearance of evil to this case. Okay. So I would say that statement. Then I'd have a footnote, and I'd refer to the record to show that. And what in the record would show that? Okay. The record before us. I believe my co-counsel, Mr. Brannan, will address this, but there was a motion filed prior to trial asking that certain evidence of other crimes not be introduced. And I will leave it up to him to address this. Okay. Well, maybe we ought to let him talk, because you. I've used up a good part of my time. I've used it all up. Go ahead. I've used it all up. And then some. But we let you go on, because one of our colleagues was asking questions. Okay. Thank you. Thank you very much. So, Mr. Brannan, can you hear us okay? I hope to get my full 10 minutes. You will. You'll get your full 10 minutes. Okay. Thank you. Uh-huh. Let's change the clock here to 10 minutes. Hold on one second, please. We're going to change this around. Okay. You've got your 10 minutes, Mr. Brannan. Okay. Thank you. I would like to address today the fact that the defendant's trial was compromised by the district court's decision to allow a substantial amount of other acts, uncharged offense and gang affiliation evidence, that was clearly cumulative and was highly prejudicial. Now, the uncharged offense evidence was a home invasion robbery and three drive-by shootings. And the government spent a majority of its time on the uncharged offense evidence, as opposed to the gang affiliation evidence. But they're all one package. Now, I just want to define the scope of the problem briefly. 170 pages of trial transcripts and 25 pages of the government's 75-page summation were devoted to discussing and the evidentiary presentation of the uncharged offenses. Furthermore, the jury was really focused in on the invasion, the home invasion robbery, because they asked for Murray's testimony to be reread that concerns that robbery. I want to direct the argument beyond 404B and specifically address 403. Let's just assume that the evidence was admissible under 404B, although we argue that it was not. And I'm going to submit on the briefs on that part of the argument. I want to focus on 403. And specifically, the district court's failure to conduct an adequate 403 balancing analysis when evaluating the admissibility of the challenged evidence and also its misinterpretation of the rules. Now, the D.C. simply just didn't place on the scales and evaluate everything it really had to weigh in conducting an adequate 403 analysis here. And in sum, in short, the court just ruled, well, everything has to come in because the defendants have admitted they're going to defend themselves against the government's case at trial. And I submit that that's just not a correct understanding and ruling with respect to a 403 balancing analysis. Now, the government, and here's why. Here's the picture of why the court didn't weigh what it needed to weigh. The government admitted it had a mass of circumstantial evidence with which to prove their case. I can give you the citations for where that's listed. I don't think we need to. I need to go over and list that any longer. Nevertheless, it maintained that it needed the challenged evidence for three reasons. To tie the defendants together, to identify the individuals who discharged the firearms, and to link Neal, co-defendant Neal, to the charge offenses. First of all, they didn't need any of that. They didn't need the uncharged offenses to do any of that. They admitted having a mass of circumstantial evidence. Second, the defendants admitted they were, okay, with respect to tying the defendants together, they had a lot of evidence to do that, loads of evidence. Furthermore, the defendants admitted they were cousins, friends, and associates who spent a lot of time together. So they didn't need it for that reason. Linking co-defendant Neal to the charges, they had a mass of evidence linking co-defendant Neal to the charges. That's at AOB, page 11. You can read the list of evidence they had. And the third reason, to identify the individuals who discharged the firearms during the charged robberies, and here is the essence of one of the misunderstandings by the district court. The district court was confused about the defendants' cumulative evidence argument. The district court kept saying, excuse me, the district court's argument based on the defendants' cumulative argument was that, well, since the defendants are going to challenge the government's case, then it's all got to come in. And furthermore, how is it cumulative? Because the district court was focused on the government's contention that it needed the evidence to identify who the shooters were. But the government didn't need any to identify the shooters. The indictment was charged collectively against all the defendants. It was a conspiracy charge. There was plenty of evidence showing that guns were used during some of the robberies and discharged during others. And there was no need whatsoever to identify who the shooter was. And yet, that's exactly what the court was focused on. I'd like to quote page 2 of the reply brief. The court actually reinforced the notion that it was focused on the fact that the government had to prove who was the actual shooter three times. The court says, page 2 of the reply brief, all right then, quote, based on what is cumulative, what is it cumulative to? In other words, what other evidence do they have that defendant major is the one who was the trigger man? It's irrelevant. It's irrelevant. It doesn't matter who the trigger man was. The fact that they were collectively charged within a conspiracy, they're all liable equally. If, in fact, there was evidence showing that a gun was used or brandished during these robberies, and there was plenty of evidence. Page 3, if the trier of fact is convinced that there is a robbery or a series of robberies, they're going to have to figure out who did pull the trigger wrong. They didn't have to show who pulled the trigger. And the same thing on page 4 of the reply brief. And so the court has completely misunderstood the reason for the evidence. And in misunderstanding that and not understanding the cumulative argument, the court just says, well, it all comes in because the defendants are going to defend themselves. Well, that's not the law. And that's not the proper or adequate way to conduct a Rule 403 analysis. And so if a constitutional right to a fair trial includes allowing a defendant the opportunity to, on a fair playing field, defend against the charges, then these defendants didn't get that opportunity in this case because of this mass of evidence that came in. And we know, of course, that the jury was focused on the home invasion robbery and asked for a reread. The court apparently, and this is my last point, didn't understand the equivalence between circumstantial and direct evidence. It seems to believe that somehow circumstantial evidence was less than direct evidence, and we know that that's not the case. That circumstantial evidence can be as strong and even stronger than direct evidence. And that informed its misperception of allowing this in because the defendants indicated they were going to try to defend themselves at trial. Unless there's any questions, I'll reserve some time for rebuttal. Yeah. You say that the district court didn't have any reason to find out who the shooter was. But if you've got a Section 924C case, it does make a lot of difference whether you're brandishing or shooting. Wouldn't that make the difference? No, because if there was evidence of the gun, there was people in these many markets and convenience stores that testified. And if a gun is shot, then all the perpetrators are liable for shooting. For 924C purposes? I'm sorry? For 924C purposes, everyone in the conspiracy gets the shooting sentence? Is that your point? Yes. Everyone's responsible for the use or the brandishing or use of a gun. No, this isn't brandishing. There's a difference between brandishing and shooting in the amount of time you spend in jail. That's correct. So wouldn't it be important for the government, if they choose to go after shooters, to get that evidence? And isn't that what the district court was talking about? But the indictment doesn't charge anyone specifically with anything. It doesn't name specific people. I'm not sure that answers my question. But doesn't the indictment and the conspiracy charge control? And if the defendants are collectively charged for either brandishing or shooting, then they will be guilty of that. And in any particular robbery, if there was shooting, then they're all guilty of shooting by virtue of conspiratorial liability. Or if in any particular robbery brandishing was the evidence, then they're all guilty of brandishing. Okay. If both. I don't see how you would have to identify who did what. Take another look at 924C. All right. I have nothing for you. All right. Let's hear from the government. May it please the Court, my name is Kim Sanchez, and I'm the assistant U.S. attorney who indicted this case, who responded to motions, and who responded to the appeal in this case and took the case to trial. Your Honors, the trial court did not abuse its discretion in determining that the evidence of the Pacheco shootings and the home invasions were not true. The trial court did not abuse its discretion in determining that the evidence of the Pacheco shootings and the home invasion robbery was admissible at trial under a 404B analysis. Don't we really deal with the tests under Spallone or Spalloni? I'm not sure how you say it. Isn't that kind of a controlling case here? I'm sorry, Your Honor. Don't we have to look at the tests? I guess it's a four-part test of Spalloni, United States v. Spalloni, in this case, and analyzing whether the 404B tests have been met in this case about prior crime and so on? We do, Your Honor. And they obviously contend that that has not been met. How do you distinguish? What's your best response to their argument that the Spallone or Spalloni tests have not been met here? Your Honor, in this case, the overwhelming argument from the defense is that the government had overwhelming evidence aside from this evidence, and therefore, the court did not need to rule that it was admissible under a 404B, 403 analysis. And there are two tests in determining whether evidence is admissible under 404B and 403. There's a four-part test, as the court indicated, as to whether the evidence is relevant, whether it is too remote in time, whether the evidence is sufficient. And I'm sorry, Your Honor, I forget the fourth element. But the main focus was whether the evidence was ---- I'm sorry, Your Honor. It's okay. Take your time. Whether it had some other purpose than just showing that the defendant had a propensity to commit a crime. And in this case, the evidence clearly had a purpose of showing both plan as well as identity and with respect to the home invasion robbery motive as well. And, Your Honor, the massive evidence in this case, and I think that the defense argument presumes that the evidence was properly admissible under 404B, although I understand that in their brief they dispute that, clearly in this case the evidence did show identity. And how it showed identity was by identifying the individuals who were firing the guns and the Pacheco shootings as well as in the home invasion robbery. That also provided evidence of the identity of the individual who were involved ---- individuals who were involved in the series of robberies. And that includes Portia Neal, which I think somewhat gets lost in the arguments because they're focused on defendants Major and Huff. But also charged in the conspiracy was a co-defendant, Portia Neal. And as evidence that the defense or that the jury wasn't overwhelmed by the evidence of the home invasion shootings in particular, the jury found that Portia Neal was not guilty as she was charged in this case as a conspirator or as participating in the robberies. But that wasn't the argument that was being made. The argument that's being made is you didn't need it. You had other circumstantial evidence, so you didn't need it. And, Your Honor, that would be under the 403 balancing test. And the government did need this evidence. It was the mass of the linked circumstantial evidence and how it was connected to one another that actually identified the defendants. If you just look at the robberies, there's five robberies that there were ballistic evidence that showed there were four different guns used in the series of robberies. Then when you put that in conjunction with the fact that in these three Pacheco shootings there were cartridge cations and bullets that matched those four firearms, it, number one, puts the shooters in those robberies together in the crimes. And, number two, when you look at the other evidence from the Dollar Tree robbery as well as the evidence, the Dollar Tree robbery where Portia Neal was employed at that store, and the evidence at trial established that there was inside information provided to the individuals who robbed the store that she would have had along with cell site evidence that showed the defendants, Marcus Major and Jordan Huff, in the area of the Dollar Tree robbery around the time the robbery occurred as well as phone records that show them in communication with Portia Neal around that time, along with a meeting several hours after the Dollar Tree robbery. That then links back to the Pacheco shootings where, again, there was cell site evidence as well as phone records that showed that these parties were in communication with each other around the times of the shootings and that Marcus Major and Jordan Huff were in the areas of the shootings when they occurred. And at that time, Portia Neal was in a custody dispute with David Pacheco over the custody of a daughter that they shared. So it's the connection between all of the evidence that interlinks the evidence and makes the circumstantial evidence so strong. It's not any one piece of evidence that identifies the individuals who were the shooters or who were the individuals that robbed all of the stores. When you add on top of that that there were videos from each of many of the robberies where you could see an individual who had a signature sweatshirt on, also could see that that individual was brandishing a revolver, and in the end that sweatshirt and the revolver were recovered after the Bulldog liquor robbery, the last in the series on July 24th of 2006, in the path of travel of Marcus Major containing his DNA. That then can link back and show the identity of the shooter in the Pacheco shootings as well as in the home evasion shooting being the same person who committed the robberies in the intervening time. Because the robberies started in December of 2005, ended in July of 2006, and there were multiple robberies in between those incidents that had the same modus operandi. So, again, I'm not going to go into the specifics of what happened in those robberies. I'm just going to point out that some of those robberies, some of them had bullet casings that matched cartridge casings and bullets from the other robberies. So, again – So, in sum, from the government's perspective, contrary to what the defense counsel have said, that this is not a situation where the government didn't need the information to which they object. It needed it in order to tie it all together. Is that right? It was important in the – it wasn't offered for a purpose other than to show identity, motive, or plan. If the objective evidence had not been introduced, would the government still have had a case to convict these folks on the same basis? The government would still have had a case. However, the probative value of that evidence is not substantially outweighed by the unfair prejudice, which would be the analysis as to whether it should be admitted under 403. So you're saying we ought to look at each one individually, like the jackets or whatever, and see what purpose it was introduced for and analyze it on that basis? Yes, Your Honor. Other than the aggregate. Could I turn you to another question that is of concern to me? This has to do with sentencing. Yes, Your Honor. That's the sentence under 924C. Yes, Your Honor. Okay. Now, under 924C, as I understand it, the first indictment returned from the jury is very significant. If it's a brandishing weapon, you get a different sentence than you do if it's a firing weapon. That's correct. And the district judge chose to decide that the first was a firing weapon, and this results in three extra years that the people are serving. Now, I understand they have long terms, but still in all, three years is three years. Now, I'm having difficulty with how this decision is made. The Supreme Court has told us in deal that they don't occur all at the same time. We know the jury makes a decision. Now, you don't want to leave it up to the prosecution to make a decision that this is the first return. The prosecution doesn't know what happened in the jury room. And there were no specific interrogatories sent to the jury as to what was the order of their findings. So it leaves us in a position that the record is completely bare of any indication as to whether the first return had to do with a firing or a brandishing. Now, I'm not being critical of the government. I'm being critical of the legislature. It's just impossible to do that. But the district judge chose to use the shooter crime, and that added additional time onto the people. Now, I don't see the basis in the record for the district judge coming to the conclusion that the first return by the jury was of the shooting crime. Can you help me with that? An honor, you're under Deal v. United States. The court talks about the definition of conviction and when an offense occurs for legal purposes. The court said that an offense doesn't occur for legal purposes until there's a conviction. The court defined conviction as when there's a finding of guilt and indicated that that occurs successively in time as the offenses are, as the verdicts are returned. The first verdict returned is in order of the charging document. So count one would be a conviction that necessarily would precede count two. And in this case. Assuming the jury did count one, count two, count three. But there's nothing in the return of the jury. Usually we say we find them guilty of blah, blah, blah, blah, blah, blah. But there's nothing to show the jury actually took up the first count and decided it first. The statute requires that. And, Your Honor, in Deal, the court didn't look at how the jury returned, although it wasn't the precise issue addressed in defining conviction and offense for legal purposes. What the Deal case tells us is that these things occur in some order and we don't know the order. But the conviction we're talking about for this section occurs when the jury makes that decision. The rest of the decisions can be hours later or days later. But we don't have any way, unless somebody asks for an interrogatory, to know when, in fact, the jury made the first determination. And, Your Honor, it would be the government's position that under statutory construction and even in the reading of Deal that the conviction occurs when the conviction is returned, the finding of guilt in court. And the finding of guilt in court is as the judge is reading the verdict form in successive time, starting with count one, going through count 62. See, what this does is put in the hands of the prosecution a decision of whether or not the first one is going to be a gun shooter or whether it's going to be brandishing. And in Deal... Because they make those out. I mean, that's the way it was when I was a trial judge. And, Your Honor, in Deal, the court recognized that in making decisions, charging decisions, that's an executive power that's exercised properly. But in Deal, they said that it occurred not when they came back, but they do those as actually found in the jury room when they make those determinations. So this is my problem. This is my problem. If I don't know whether the first one found by the jury was a shooter or the brandish, wouldn't the law of lenity require me to say it's a brandish and not a shooter? And, Your Honor, my fallback is on Deal, that it's a plain reading of the statute. And in 924C, when the statute talks, and I believe that we're just at a point of disagreement, talks about second or subsequent conviction, that the court should look to the order as the charges are in the indictment. And although that that gives the prosecutor some power as to how they're going to charge the case, that that's a part. It's no different than deciding whether or not to charge more than one 924C or whether or not to file a Section 851 information in a drug case that would increase the penalty. So that the decision of how to charge the case, although it would have an effect on sentencing, is part and parcel of the prosecution's decision to charge. So you think that Deal blesses this concept that however the indictment is written in terms of its order of charges, is the conclusive determination here as opposed to a finding of the jury as to which one comes first? I don't think Deal speaks squarely to that issue. So then we get back to the problem that Judge Wallace talked about, which is it leaves entirely in the hands of the prosecutor which charge to put first, right? And I don't think that there's a case on point. Right. Your Honor is correct. But the statute does seem to require the jury's involvement in determination, right? The statute requires a conviction. Right. The statute doesn't speak to whether the jury determines the order or not. But if a conviction is required and the jury doesn't say anything about it, then don't you get into the rule of lenity issue that Judge Wallace talked about? I mean, basically it could have, in this case, what, three years? I think somebody said it adds. Yes, Your Honor. So in this particular case, the rule of lenity requires us to say we don't really know which one came first. So under the rule of lenity, we have to take the brandishing as opposed to the shooting. And under the plain meaning of the statute, the government's position is that under the plain meaning of the statute, the statute speaks to the order that the convictions are returned. And if we don't know what that is? I would like to ask a question. Since the Senate is for over 700 years, taking three years away isn't going to make any difference. But I want to ask you, you recognize that the defendant cannot serve 700 years. Yes, Your Honor. So what does it mean for us to affirm a sentence of 700 years or more? I'm not sure that I understand your question. What does it mean to say I affirm a sentence of 700 years? You know that the person cannot possibly serve it. It would be akin to affirming a life sentence. Well, shouldn't we say a life sentence? Don't we seem silly to say I'm going to send you to jail for 700 years? Your Honor. Silliness being a term of art. Well, I mean, you're asking judges to put themselves in a ridiculous position. We're going to send him for 700 years. What does that mean? I do understand the Court's concern, although in Harris, as the Court recognized, if the question is whether it violates the Eighth Amendment, being silly. No, it doesn't violate the Eighth Amendment. It just is crazy. It is just something that cannot be done. So we're asked to do something that cannot be done. Yes, Your Honor. So don't you think we might exercise a little common sense when we're asked to do something that cannot be done? I don't believe that there's any legal authority to reverse the court to overturn it. There's no legal authority to exercise common sense? Your Honor, I'm not sure that there's any legal authority to reverse the trial court's imposition of the sentence. Well, when you get an impossible sentence, you better do something about it. I understand. All at whole. And, again, I would consider it akin to a life sentence, and I imagine. . . And you make us ridiculous by asking us to do something that is impossible. Have there been any other cases on this section? It seems to me it would come up before now, other than, of course, Diehl. But Diehl says findings of guilt on several counts are necessarily arrived at successively in time. So it's just telling us that they find people guilty differently. I don't imagine any jury does it in the grand idealist, find them guilty on all. So that doesn't help us too much. And maybe it was my reading of the case in context with what I know to happen in court. And my reading of that case meant that the successive in time occurred as the verdicts were read in the courtroom after a trial, which, in my experience, is always done in succession of the indictment. So your view is the arrival doesn't occur until they announce, not when it's within the jury room when they decide? Yes, Your Honor. That was my reading of Diehl, although, like I said, it didn't squarely address that issue. Yeah. But as I understand it, the district court used count three, a discharging conviction, as the first conviction rather than a brandishing one. Count three, the discharge conviction came before the brandishing conviction. So count three was discharging, and I believe the first brandishing was at count nine. Did this ever come up in a trial? Was there ever any discussion of this or objection? I don't recall there being any objection at trial, although the defense in their sentencing objections to the pre-sentence report, I believe, raised an issue about the order of the sentencing. Okay. And what did the district court decide at that time, if you recall? What does the record show? The district court decided that the sentence that should be imposed first was the sentence that was first in time in the indictment. First in, not chronological time, first in order in the indictment. And determined which was the first in order was by? Count number. By count number. So count three came before the first brandishing count, which was at, I believe it was around count nine. Now, this issue didn't come up in deal. It did not, Your Honor. So this might be first impression. It appears to be a matter of first impression, Your Honor. Would a little bit of time give assistance to the parties, do you think, to give us better ideas on this? This is something that really wasn't focused on in the briefs too much, although Major did make one argument on this, but it wasn't precisely this argument. If it bothers us enough, you wouldn't mind giving us a little bit of written briefs on this? Of course not, Your Honor. I would be happy to. And I believe that it would most likely be in reference to application of similar considerations in other cases. I don't believe that there's a case squarely in point, but I certainly would be happy to look further. But it's a very important issue. I mean, here, if you're going to be here for 5,000 years and they cut it down to three, maybe not so much. But in the long run of things, this could be very important. It is an important issue. The only thing that I did want to clear up, at trial the government didn't introduce gang affiliation evidence. We did not call a gang expert at trial. The citations by defense counsel in the Marcus Major brief were from a motion in limine hearing. There was discussion about High Roller Boys as being a family at trial and about the defendant's association with that, but there was no gang expert testimony or gang affiliation evidence at trial. Thank you. Thank you very much. Thank you. The defense counsel has used up time, but we'll give you however you want to divide it. We'll give you one minute to respond. In the aggregate, I don't know how you're going to divide it, but we'll give you one minute. One or the other. I don't care which one you're going to do. I would like to respond. Okay. Go ahead. I would just like to say a few things. The government admitted it had a mass of circumstantial evidence. There was thousands of pages of transcripts, an unbelievable amount of circumstantial evidence. The idea that they needed the uncharged defense conduct to prove their case is just a ridiculous notion. The record is voluminous with their evidence, and maybe the court got confused and thought that, well, we had to identify who was responsible for the drive-by shooting and the home invasion robbery because there was only ballistics evidence to show that, but that's inappropriate because it's using the evidence that was prejudicial and unnecessary and cumulative to then add a tremendous amount of prejudice to the trial. The other thing is that the government was not forthcoming with the fact that it knew it was going to present Murray's direct testimony, and the judge didn't have that information when weighing the 403 evidence. Okay. Counsel, you've used up your additional minute. I had two. No, no. Just one. No, no. Just one. We thank all counsel for argument, and the case of United States v. Major and Huff is submitted, and the Court will stand adjourned for the day. Can I ask a question? No. Oh, housekeeping, sure. Go ahead. Okay. We provided the issues by talking to Mr. Rankin, but I'm assuming that if you didn't like mine, if you didn't like his, it would apply equally to both of them. I can't even comment on that. We'll have to find out. Okay. All right. You know how you like to tell us a story about things?  All right. All right. Thank you. Thank you, guys.
judges: Wallace, Noonan, Smith